IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE I, individually and as next friend of JANE DOE II, a mentally disabled individual, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-CV-474-N |
| DALLAS AREA RAPID TRANSIT, VEOLIA TRANSPORTATION, INC., and VEOLIA TRANSPORTATION SERVICES, INC., | § § § § § | |
| Defendants. | § | |

## ORDER

This Order addresses four motions. The first three are motions for summary judgment: one each by Defendants Dallas Area Rapid Transit ("DART") [Doc. 39];[1] Veolia Transportation Services, Inc. ("VTSI") [28]; and Veolia Transportation, Inc. ("VTI") [27]. The Court grants these motions in part and denies them in part. The fourth is DART's motion to strike [47], which the Court denies.[2]

---

[1]DART has also filed a motion to dismiss [29]. The Court denies this motion as moot because the Court grants partial summary judgment to DART and because the motion to dismiss includes no arguments that affect the claim that survives summary judgment.

[2]Plaintiffs have also filed a motion for extension [44]. The Court grants this motion.

## I. THE PARTIES' DISPUTE ARISING OUT
## OF THE SEXUAL ASSAULT ON DOE II

Plaintiff Jane Doe I ("Doe I") is Plaintiff Jane Doe II's ("Doe II") mother and legal guardian. Doe II is a mentally disabled individual. DART operates mass transportation services in and around Dallas, Texas. At the time of the events giving rise to this lawsuit, DART contracted with VTSI to provide paratransit services for disabled individuals. VTI is a holding company and VTSI's corporate parent.

Doe I secured transportation services from VTSI for Doe II. In October 2011, VTSI employees Bennie Ivy and, allegedly, Kenneth Hardnet repeatedly sexually assaulted Doe II while Doe II was on a paratransit vehicle operated by Ivy and Hardnet. The summary judgment evidence indicates that the sexual assaults took place on at least two occasions, in two different locations. Ivy has been convicted of aggravated sexual assault, and Hardnet is awaiting trial on the same charge.

Doe I brought this suit on behalf of herself and Doe II. She asserts claims against DART, VTSI, and VTI for violations of 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"); and several torts under Texas state law – assault, false imprisonment, negligence, negligence per se, breach of fiduciary duty, and intentional infliction of emotional distress ("IIED"). Defendants now move for summary judgment on all of Doe I's claims.

## II. STANDARD OF REVIEW FOR MOTIONS
### FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*,

ORDER – PAGE 3

79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, factual controversies are resolved in

favor of the nonmoving party "'only when an actual controversy exists, that is, when both

parties have submitted evidence of contradictory facts.'"  *Olabisiomotosho v. City of*

*Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v.*

*Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  DOE I'S SECTION 1983 CLAIMS DO
### NOT SURVIVE SUMMARY JUDGMENT

Doe I asserts that Defendants deprived Doe II of her constitutional rights in violation

of 42 U.S.C. § 1983.  Though she does not specifically identify which rights Defendants

allegedly violated, she points to four particular acts that, she maintains, resulted in the

violations: (1) failing to abstain from sexually assaulting Doe II, (2) falsely imprisoning her,

and (3) failing to take precautions necessary to protect her or prevent her injuries.[3]  The

summary judgment record demonstrates, however, that Doe I's claims fail.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured."  42

U.S.C. § 1983.  To state a claim under this section, a plaintiff must (1) allege a violation of

---

[3] The complaint also asserts that Defendants violated  a section 1983 by prohibiting
Doe II from riding paratransit buses following the assaults.  Doe I, however, admitted in her
deposition that she – and not DART, VTSI, or VTI – made the decision to have Doe II stop
riding paratransit buses.  Dep. of Jane Doe I 53:24–54:7, DART's App. Supp. Mot. Summ.
J. [hereinafter DART's App.] 11–12.  This basis for Doe I's section 1983 claim thus
necessarily fails based on the summary judgment record.

a right secured by the Constitution or laws of the United States and (2) demonstrate that a person acting under color of state law committed the alleged deprivation. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

### A. The Sexual Assaults Were Not Pursuant to a DART Custom or Policy

DART is a transportation authority created pursuant to TEX. TRANSP. CODE § 452.001, *et seq*. As such, DART is a "governmental unit." *See id.* § 452.052(c). In order to hold a municipality or other governmental unit liable under section 1983, the constitutional deprivation of which the plaintiff complains must be pursuant to a government policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000) (per curiam). Such a policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). A plaintiff cannot recover from a governmental unit on a theory of respondeat superior "for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

In this case, Doe I has not pointed to any custom or policy that could support her section 1983 claim against DART. There is no indication that Ivy and Hardnet assaulted or falsely imprisoned Doe II pursuant to an official or unofficial DART policy. As to the claim that DART's failure to take precautions necessary to prevent harm to Doe II violated section 1983, it is true that in at least one circuit a governmental unit may incur section 1983 liability

if "policymakers were aware of similar conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 176 (3d Cir. 2001) (quoting *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984)). The Fifth Circuit has not adopted this standard, however, and, even if it had done so, there is no evidence in the record that Ivy and Hardnet committed sexual assaults against others before they attacked Doe II.[4] DART's alleged failure to take precautions, then, does not amount to a section 1983 violation. The summary judgment record thus does not support Doe I's section 1983 claim against DART.

### B. VTSI Is Not Responsible for the Violations of Doe II's Rights, and It Did Not Act Under Color of State Law

VTSI, like DART, is entitled to summary judgment on Doe I's section 1983 claims. The summary judgment record demonstrates that Doe I's claims fail for two reasons.

### 1. VTSI Cannot Be Held Responsible for Ivy and Hardnet's Violations of Doe II's Constitutional Rights. – Doe I does not claim that VTSI itself violated Doe II's rights; rather, she claims that VTSI should be held responsible for Ivy and Hardnet's violations. VTSI, however, like DART, cannot be liable under a theory of respondeat superior. The Fifth Circuit has noted in an unpublished opinion that "[e]very circuit court to consider the issue has extended the [*Monell*] holding to private corporations." *Meade v. Dillard Dep't Stores*,

---

[4]There is some evidence that Ivy had been convicted of a felony before VTSI hired him. The parties dispute whether VTSI should have known about Ivy's past. Regardless, however, the previous crime – reporting false information to the police – is not sufficiently similar to sexual assault to trigger section 1983 liability in DART, VTSI, or VTI.

275 F.3d 43 n.3 (5th Cir. 2001) (unpub.) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (collecting cases)); *see also Calhoun v. Miles*, No. 4:06-CV-178-Y, 2006 WL 2423416, at *2 (N.D. Tex. Aug. 22, 2006) ("[T]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation . . . performing a government function.") (citing cases). This Court finds this precedent persuasive and likewise applies the *Monell* requirements to claims against private corporations. Consequently, to hold VTSI liable for the injury to Doe II, Doe I must show that Doe II's injury was pursuant to a VTSI custom or policy. As with her claims against DART, Doe I has pointed to no evidence showing that this was the case. Further, she has not introduced any evidence tending to show even that any VTSI supervisor or manager had personal knowledge of Ivy and Hardnet's activities. Because VTSI itself did not violate Doe II's constitutional rights and because it had no policy or custom that led Ivy and Hardnet to violate those rights, VTSI cannot be liable for that violation under section 1983. VTSI is thus entitled to summary judgment on this claim.

     *2. **VTSI Was Not Acting Under Color of State Law.** –* The Court grants summary judgment to VTSI for a second, independent reason: it did not act under color of state law. The requirement that the deprivation of a plaintiff's constitutional rights be "under color of state law" means that a plaintiff cannot recover under section 1983 for purely private conduct, even if that conduct is wrongful. *See Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). Private action, however, may be deemed to be state action where the challenged conduct

ORDER – PAGE 7

"may be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

There are three tests to determine whether a private party acted under color of state law. *Id.* at 939; *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241–42 (5th Cir. 1999). First, a private entity is a state actor under the public function test if the entity performs a function that is "exclusively reserved to the state." *Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157–58 (1978)). Second, the state compulsion (or coercion) test holds the state responsible "for a private decision only when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quoting *Blum*, 457 U.S. at 1004) (alteration in original). Third, a private party acts under color of state law under the nexus or state action test where the state has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357–58 (1974)) (alteration in original).

In this case, VTSI did not act under color of state law under any of the three tests. First, courts have tended to construe the public function test narrowly. The Supreme Court, for instance, has held that the provision of utility services, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–54 (1974), and "the education of maladjusted high school students," *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982), are not within the exclusive province of the state. Correspondingly, the Fifth Circuit has determined that a private volunteer group

providing fire protection was not performing an exclusive state function. *See Yeager v. City of McGregor*, 980 F.2d 337, 343 (5th Cir. 1993). Bearing in mind this guidance, the Court concludes that the transportation of disabled individuals is not an exclusive state function. *See Santiago v. Puerto Rico*, 655 F.3d 61, 69–70 (1st Cir. 2011) (holding that private company transporting mentally disabled students to and from school was not performing exclusive government function); *Black ex rel. Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 710–11 (3d Cir. 1993) (same for company running school buses); *Arredondo v. Laredo Mun. Transit Sys.*, 581 F. Supp. 868, 871 (S.D. Tex. 1984) (same for company providing mass transportation services).

Second, Doe I has pointed to no evidence in the summary judgment record suggesting that the state has exercised coercive power over VTSI or that the state has provided so much encouragement that the Court should consider VTSI's actions to be those of the state. The Court concludes that the state exercised insufficient power or encouragement to allow the Court to consider VTSI a state actor under this test.

Third, the summary judgment record is also bare of evidence suggesting that the state was interdependent with VTSI to the point that it was a joint participant in VTSI's enterprise. *Accord Santiago*, 655 F.3d at 71–72 (finding no interdependence between state and private bus company transporting special-needs students); *Black*, 985 F.2d at 711 (finding "no symbiotic relationship" between school district and private bus company transporting students).

ORDER – PAGE 9

The Court concludes, in sum, that the summary judgment record demonstrates that VTSI did not act under color of state law.  VTSI is therefore entitled to summary judgment on Doe I's section 1983 claim.

### C. VTI Is Entitled to Summary Judgment

VTI, VTSI's holding company, is entitled to summary judgment for the same reasons VTSI is.  First, VTI did not itself violate Doe II's constitutional rights, and the summary judgment record includes no evidence suggesting that it is accountable for Ivy's or Hardnet's actions.  Most notably, it appears that VTI did not employ Ivy or Hardnet.  Second, there is no evidence in the record to support the allegation that VTI acted – to the extent it acted at all with respect to the events giving rise to this suit – under color of state law.  The Court accordingly grants VTI summary judgment on Doe II's section 1983 claim.

### IV.  DOE II'S ADA CLAIMS FAIL
### AS TO ALL DEFENDANTS

Doe I seeks to recover from Defendants under Title II of the ADA for Defendants' alleged refusal to make video surveillance available to mentally disabled riders, even though DART allegedly required such surveillance for its unimpaired riders.[5] Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Before a

---

[5]Doe I also seeks to recover for Defendants' alleged refusal to allow Doe II to ride paratransit buses after she was assaulted.  Again, Doe I's sworn deposition statement taking responsibility for ending Doe II's access to paratransit buses prevents recovery under this theory.

court can consider relief under the ADA, a plaintiff must establish a prima facie case of discrimination. To state such a case, Doe I must prove that (1) Doe II is a qualified individual within the meaning of the ADA; (2) Doe II is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of Doe II's disability. *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

### A. Doe I Has Not Proved a Prima Facie Case as to DART

The summary judgment record demonstrates that Doe I has not proved a prima facie case under Title II. Specifically, her case falters on the second and third elements. She maintains in her complaint that DART required video surveillance on buses for nonimpaired riders while failing to make it available on buses for disabled riders. DART points to summary judgment evidence countering this assertion. According to DART's vice president of maintenance, DART maintains 800 buses for individuals without disabilities, and only twenty of these buses had video cameras at the time of the sexual assaults on Doe II. Aff. of Michael Hubbell ¶ 3, DART's App. 1. According to Hubbell, the decision to install video equipment on a bus depended on a number of variables, such as cost, type of vehicle, and available technology. *Id.* Doe I points to no evidence to dispute these characterizations, nor does she point to any evidence indicating how many paratransit buses had video surveillance

equipment at the time Ivy and Hardnet assaulted Doe II.[6]  It appears from the record, then, that DART had installed cameras in 2.5% of its buses for unimpaired riders and an unknown number of paratransit buses.  From this evidence, the Court cannot conclude that DART discriminated against Doe II on account of her disability.  First, it appears that DART never "required" any particular buses – much less all buses – for nonimparied riders to be equipped with surveillance equipment.  Thus, it does not appear that DART denied Doe II any particular service, program, or benefit or that DART otherwise discriminated against Doe II.  Second, and just as damaging, there is no evidence that DART chose not to equip Doe II's bus with surveillance equipment because she or anyone else riding the bus was disabled.  Rather, the record suggests that DART made that decision – as it made every decision regarding surveillance equipment – on the basis of the factors identified by Hubbell.  Accordingly, the Court concludes that Doe I has not made out a prima facie case of discrimination and that DART is thus entitled to summary judgment on her ADA claim.[7]

_____

[6]She implies that the number is zero, but the summary judgment record contains no evidence to support that implication.

[7]DART also argues that the doctrine of sovereign immunity makes DART immune from suit under Title II of the ADA.  This is incorrect.  The Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).  Because the Court determines that no Title II violation occurred, the Court does not reach the question of whether DART is immune from liability.  *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (listing steps to determine whether Title II validly abrogates sovereign immunity in a given case).

### B. VTSI and VTI Both Deserve Summary
### Judgment on Doe I's Title II Claims

VTSI and VTI are entitled to summary judgment on this claim for two reasons. First, as explained above, the summary judgment record show that Doe I has not proved a prima facie case of discrimination. Second, a defendant must be a "public entity" to be subject to Title II. 42 U.S.C. § 12132. VTSI and VTI assert that they are not public entities, and Doe I concedes that Title II does not apply to them. For these two reasons, the Court grants summary judgment to VTSI and VTI on this claim.

Doe I seeks leave to amend her complaint to assert claims against VTSI and VTI under Title III of the ADA. She also asserts that a formal motion requesting leave to amend will be forthcoming, but she has filed no such motion as of the date of this Order. To the extent Doe I seeks leave to amend in her responses to VTSI's and VTI's motions for summary judgment, the Court denies such leave. The Court further notes that any motion for leave to amend at this point in the litigation must show good cause pursuant to Rule 16(b). *See* Scheduling Order [8] ¶ 2.

### V. MOST OF DOE I'S TEXAS TORT CLAIMS FAIL

Doe I asserts six tort claims against Defendants: assault, false imprisonment, IIED, breach of fiduciary duty, negligence, and negligence per se. The only claims that survive summary judgment are Doe I's negligence claims against DART and VTSI that are based on the inactive GPS system in the bus on which Ivy and Hardnet assaulted Doe II (the "Bus").

### A. The Court Retains Jurisdiction
### Over Doe I's State Claims

When an action that has been removed to federal court on the basis of federal question jurisdiction no longer involves a federal question, the court has discretion to either retain or remand the remaining state law issues. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351–52 (1988); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338–39 (5th Cir. 1999). In deciding whether to remand, a court should consider the factors of judicial economy, fairness, convenience, and comity. *See Carnegie-Mellon*, 484 U.S. at 350. It is true that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. The test the Court applies, however, "is a flexible one, under which courts should conduct a fact-specific inquiry, considering the totality of circumstances of each case." *Guzzino v. Felterman*, 191 F.3d 588, 594–95 (5th Cir. 1999). No single factor is dispositive. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992).

Here, the first factor strongly supports retaining Doe I's state law claims. Trial in this case was originally scheduled for March 4, 2013, but the Court delayed trial pending resolution of Defendants' motions for summary judgment. *See* Order, Jan. 28, 2013 [45]. Doe I filed the case in state court in December 2011, but it has been pending in this Court since February 2012. The parties have completed discovery under this Court's rules and supervision, and the Court is familiar with the parties' claims and defenses. Retaining Doe I's tort claims would thus serve the interest of judicial economy. The second and third

factors do not influence the Court's decision because its decision will not significantly affect either party in terms of fairness or convenience. It is true that the fourth factor, comity, weighs in favor of remand. The Court has eliminated Doe I's federal claims, and, all things being equal, state court is the preferable forum for the resolution of state claims. In this case, though, all things are not equal. The Court concludes that, on the facts of this case, the judicial-economy factor outweighs the comity factor. The Court therefore retains and rules on Doe I's state law claims.

### B. The TTCA Bars Most of Doe I's Claims Against DART

**1. The TTCA Bars Doe I's Intentional Tort and Punitive Damages Claims.** – Under the doctrine of sovereign immunity, a governmental unit cannot incur tort liability unless the legislature has waived that immunity. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998) (citing *Harris Cnty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994)). The Texas Tort Claims Act ("TTCA") waives sovereign immunity for some tort claims, though it "allow[s] suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Specifically, the TTCA provides as follows:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.  To generalize, then, a governmental unit may be liable for an injury to a plaintiff resulting from (1) an employee's use of a motor-driven vehicle or equipment, or (2) a condition or use of tangible personal or real property.  *See Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

The TTCA expressly does not waive a governmental unit's immunity as to claims "arising out of assault, battery, false imprisonment, or any other intentional tort."  TEX. CIV. PRAC. & REM. CODE § 101.057(2).  Given this provision, DART cannot be liable for Doe I's claims for assault, false imprisonment, or IIED.  Moreover, Texas courts have found that the TTCA bars claims for breach of fiduciary duty as well.  *See, e.g.*, *Williams v. Hous. Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 435–36 (Tex. App. – Houston [1st Dist.] 2003, no pet.); *City of Fort Worth v. Pastusek Indus., Inc*., 48 S.W.3d 366, 372 (Tex. App. – Fort Worth 2001, no pet.).  DART is therefore entitled to summary judgment as to each of these claims.

Furthermore, the TTCA expressly states that it "does not authorize exemplary damages."  TEX. CIV. PRAC. & REM. CODE§ 101.024.  The Court in this Order grants Defendants summary judgment on all of Doe I's non-TTCA claims.  Because the remaining claims are pursuant to that statute, Doe I may not recover punitive damages.  DART is thus entitled to summary judgment on this claim.

**2. *Doe I Waived Her Negligence Per Se Claim.*** – Doe I seeks to hold DART liable for negligence per se solely on the grounds that Ivy and Hardnet committed sexual assault. "Negligence per se is defined as the unexcused violation of a statute or ordinance which is designed to prevent injury to a class of persons to which the injured party belongs." *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985). Doe I declined to respond to DART's, VTSI's, or VTI's arguments as to why they deserve summary judgment on Doe I's negligence per se claim. The Court accordingly deems Doe I to have waived this claim. *See Hinojosa v. Tarrant Cnty., Tex.*, No. 4:08-CV-315-A, 2009 WL 1309218, at *10 (N.D. Tex. May 5, 2009) (deeming claim waived under similar circumstances), *aff'd sub nom. Cook v. Tarrant Cnty., Tex.*, 372 F. App'x 493 (5th Cir. 2010) (unpub.).

Moreover, even if Doe I had not waived this claim, it would not survive summary judgment. As explained above, the TTCA does not waive sovereign immunity for claims "arising out of" intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057(2). The Texas Supreme Court has concluded that this provision insulates a governmental unit from liability where "the conduct [the plaintiff] complains of is the same conduct that forms the basis of" an intentional-tort claim. *See Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1009 (E.D. Tex. 1997) ("Plaintiffs cannot circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence when the shooting event upon which they base their claims is actually an intentional tort."). Thus, even if Doe I had not waived this claim, it would fail nevertheless.

### 3. *Doe I's Negligence Claim Survives as to the Nonfunctioning GPS Device Only.*

– The Court reads Doe I's negligence claims against DART as falling into three broad categories: (1) negligent hiring, supervision, and retention of Ivy and Hardnet; (2) failure to include various safety devices in the Bus; and (3) failure to operate properly the GPS device installed in the Bus. DART is entitled to summary judgment as to the claims in the first and second of these categories, but not the third.

   *a. Negligent hiring, supervision, and retention.* – The TTCA bars Doe I's negligent hiring, supervision, and retention claims. These claims, like Doe I's other claims, must fall under the TTCA's waiver of sovereign immunity to be valid. That is, they must be based on (1) the operation or use of a motor-driven vehicle or equipment, or (2) a condition or use of tangible personal or real property. *See* TEX. CIV. PRAC. & REM. CODE § 101.021. Negligent hiring, retention, and supervision claims, however, involve only the use or misuse of information, and Texas courts routinely dismiss them. *E.g.*, *Tex. Dept. of Criminal Justice – Cmty. Justice Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012); *El Paso Mental Health & Mental Retardation Ctr. v. Crissman*, 241 S.W.3d 578, 582 (Tex. App. – El Paso 2007, no pet.). Likewise, the Court finds that the TTCA insulates DART from liability on Doe I's claims of negligent hiring, supervision, and retention. DART is thus entitled to summary judgment as to these claims.

   *b. Failure to include sufficient safety measures.* – Doe I also asserts that DART's policies and procedures with respect to the Bus were inadequate. For instance, Doe I notes that the Bus had no internal video surveillance equipment. The Court interpret's Doe I's

filings to assert that either of two possible TTCA provisions could cover this claim. Neither of these immunity waivers, however, is applicable.

First, to the extent Doe I challenges the overall DART policy regarding paratransit bus safety at the time of the assaults on Doe II, Doe I's claim is barred. The TTCA does not apply to claims based on either of the following:

> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.056. As the Texas Supreme Court has stated in the context of highway safety devices, "decisions about installing safety features are discretionary decisions for which the State may not be sued." *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *see also Perez v. City of Dallas*, 180 S.W.3d 906, 911 (Tex. App. – Dallas 2005, no pet.) (same for installation of safety features in building). In another case involving bus safety, a Texas state appeals court has held that a school district's decision not to equip a school bus with a stop arm "was an exercise of [the district's] discretionary powers and not subject to the [TTCA]'s limited waiver of immunity" *Cortez v. Weatherford Indep. Sch. Dist.*, 925 S.W.2d 144, 150 (Tex. App. – Fort Worth 1996, no writ). The Court similarly concludes that DART's decision not to install additional safety equipment in the Bus was a discretionary decision and that the TTCA therefore does not waive DART's sovereign immunity as to that decision.

ORDER – PAGE 19

Second, Doe I also appears to assert that the Bus, as it existed when Doe II was assaulted, was inherently unsafe because it lacked video surveillance equipment and other features designed to keep riders safe from assault. A governmental unit may waive immunity under the TTCA "when a state actor has provided property that lacks an integral safety component and the lack of this integral safety component leads to the plaintiff's injuries." *Tex. Dep't of Criminal Justice v. Diller*, 127 S.W.3d 7, 12 (Tex. App. – Tyler 2002, pet. denied) (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996); *Lacy v. Rusk State Hosp.*, 31 S.W.3d 625, 630 (Tex. App. – Tyler 2000, no pet.)). This waiver may apply even if the governmental unit is immune from liability for a discretionary decision, as DART is here. *See Tex. Dept. of Transp. v. Bederka*, 36 S.W.3d 266, 270 (Tex. App. – Beaumont 2001, no pet.) ("The retention of immunity for discretionary decisions does not preclude waiver of immunity under another section of the Tort Claims Act.") (citing *State v. Rodriguez*, 985 S.W.2d 83, 86 (Tex. 1999)).

The Texas Supreme Court has addressed this issue on a number of occasions. In *Overton Memorial Hospital v. McGuire*, for instance, the Court determined that a state hospital could be liable for failing to install rails on a hospital bed from which a patient later fell and injured herself. 518 S.W.2d 528, 529 (Tex. 1975). In *Lowe v. Texas Tech University*, the Court found that a student who injured his knee playing football could hold a state university liable for providing him with a football uniform lacking knee braces. 540 S.W.2d 297, 300 (Tex. 1976). Similarly, in *Robinson v. Central Texas MHMR Center*, the Court decided that the TTCA allowed a plaintiff to hold a governmental unit liable for the

drowning death of a child when the unit's employees provided swimming attire, but no life preserver, to the child. 780 S.W.2d 169, 171 (Tex. 1989). In a later case, however, the Court wrote that *McGuire*, *Lowe*, and *Robinson* represent the outer bounds of this doctrine and observed that "[t]he precedential value of these cases is . . . limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Clark*, 923 S.W.2d at 585.

In this case, the Court concludes that the Bus did not lack an integral safety component. While it may be true that video surveillance equipment or other safety features would have made the Bus *safer*, this fact is not sufficient to show that such safety components are *integral*. *See City of Pasadena v. Thomas*, 263 S.W.3d 43, 47 (Tex. App. – Houston [1st Dist.] 2006, no pet.) ("[A]ssuming that a machete with a hilt may be safer than one without a hilt, [the Texas Supreme Court's case law] would not espouse the conclusion that a hilt is 'an integral safety component,' even given that a machete is dangerous for the very reason that it is sharp."). Based on the summary judgment record, then, the Bus did not lack an integral safety component. Accordingly, the Court concludes that Doe I cannot take advantage of the TTCA provision waiving immunity for injuries resulting from the "use or condition" of tangible personal property. Because Doe I cannot identify a valid waiver of sovereign immunity which would apply to her claims of negligent failure to include additional safety measures in the Bus, DART is entitled to summary judgment on these claims.

     *c. Failure to operate the installed GPS device.* – Finally, Doe I alleges that DART was negligent because, even though it installed a GPS device on the Bus, that device "was inactive in the sense that the GPS information was never utilized or provided to [VTSI]." *See* Report of Keith Howse, Pl.'s App. Supp. Resp. Def.'s Mot. Summ J. [35] 13.  It is not clear from the summary judgment record whether DART collected the GPS information and failed to provide it to Veolia, whether DART failed to collect the information, or whether the GPS device failed to transmit the information. *Id.*  If VTSI and DART had properly operated the GPS device, Doe I argues, Ivy and Hardnet's supervisors could have prevented the assaults on Doe II.  *Id.* at 13; Pl.'s Br. Resp. VTSI's Mot. Summ. J. [33] 5.  DART has not responded to this evidence or argument.  This claim survives DART's motion for summary judgment.

     Again, the TTCA waives a governmental unit's sovereign immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."  Tex. Civ. Prac. & Rem. Code § 101.021.  In this case, the Bus is tangible personal property,[8] and the improper operation or misuse of the GPS system on the Bus constitutes a misuse or a condition of that property that could be found to have caused Doe II's injury.  In two separate cases, Texas appellate courts have determined that the TTCA waives sovereign immunity where a state hospital employee neglects to engage safety rails

---

     [8]*See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994) ("[T]angible personal property refers to something that has a corporeal, concrete, and palpable existence.").

ORDER – PAGE 22

attached to a hospital bed and a patient then falls from the bed. *Titus Reg'l Med. Ctr. v. Roach*, No. 06-11-00022-CV, 2011 WL 2517198, at *3–5 (Tex. App. – Texarkana June 24, 2011, pet. filed); *Hampton v. Univ. of Texas – M.D. Anderson Cancer Ctr.*, 6 S.W.3d 627, 631 (Tex. App. – Houston [1st Dist.] 1999, no pet.). The Court finds these cases instructive. As the hospitals in these cases failed to engage the beds' safety rails, so DART employees failed to engage the Bus's GPS device. This failure constitutes a use or condition of the Bus as contemplated by the TTCA.[9] It is for a jury to decide whether, because of the inactive GPS device, DART would be liable to Doe I under Texas law. If so, DART is not immune from liability on that claim.

The Court notes that the TTCA's exception for claims "arising out of" intentional torts does not insulate DART from potential liability here because Doe I's claim does not arise out of Ivy's and Hardnet's actions. It arises, instead, out of DART's and VTSI's alleged negligence in not correctly operating the GPS device.[10] The Texas Supreme Court addressed

---

[9]The Court emphasizes that the *Bus*, not the *GPS device*, is the tangible personal property in question with respect to this claim. The GPS device is a constituent part of that personal property. This observation distinguishes this case from cases in which nonuse of property has been found to constitute no waiver of immunity. *E.g.*, *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (holding that "non-use of available drugs during emergency medical treatment is not a use of tangible personal property that triggers waiver of sovereign immunity."). This case, by contrast, is more akin to *Robinson*, in which the Texas Supreme Court found that failure to include a life preserver with a child's swimming attire constituted a "use or condition" of tangible personal property and not nonuse of property. 780 S.W.2d at 171; *see also Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 223-24 (Tex. App. – Fort Worth 2003, pet. denied) (holding that barrels of ice provided without ice scoops needed to prevent contamination constituted condition of tangible personal property).

[10]The parties dispute whether Ivy and Hardnet were employees of VTSI, DART, or both. Because this claim does not have arise out of Ivy's or Hardnet's actions, however, this

this issue in *Delaney v. University of Houston*, in which a rape victim sued the University of Houston for negligently failing to repair a lock on the door through which the rapist reached the victim.  835 S.W.2d 56 (Tex. 1992).  The Court held that the TTCA waived the university's immunity, concluding that "The University's alleged failure to repair the dormitory door lock . . . [is] readily distinguishable from the intruder's conduct."  *Id.* at 60.  It also noted that "intentional conduct intervening between a negligent act and the result does not always vitiate liability for the negligence."  *Id.*  Likewise, Doe I's negligence claim is clearly distinct from Ivy's and Hardnet's intentional conduct.  The Court therefore concludes that the TTCA intentional-conduct exception does not shield DART from liability.  DART thus does not deserve summary judgment on this claim.

In short, DART is not entitled to summary judgment on the claim that it negligently failed to properly operate the GPS device installed on the Bus.  There is sufficient evidence in the summary judgment record to demonstrate a factual dispute as to whether, by improperly operating or misusing the device, DART was a proximate cause of Doe II's injury.  The TTCA waives DART's sovereign immunity as to this claim, and a jury must decide whether DART is liable for its alleged negligence.

***4. Conclusion as to Doe I's Tort Claims Against DART.*** – The doctrine of sovereign immunity bars the vast majority of Doe I's claims against DART under Texas law.  The sole claim to survive DART's motion is Doe I's claim that DART negligently operated improperly or misused the Bus's GPS device.

_____

particular dispute is immaterial in this context.

### C. VTSI and DART Receive the Same Immunity

The Texas Transportation Code provides that "[a]n independent contractor of a transportation entity performing a function of the entity or an authority is liable for damages only to the extent that the entity or authority would be liable if the entity or authority itself were performing the function." TEX. TRANSP. CODE § 452.0561. The parties do not dispute that DART is a transportation entity or that VTSI is an independent contractor of DART. VTSI, accordingly, is entitled to the same immunity to which DART is entitled. Accordingly, the Court grants summary judgment to VTSI on all of Doe I's claims except her claim that VTSI negligently operated improperly or misused the GPS tracking device on the Bus.

### D. VTI Is Entitled to Summary Judgment on All of Doe I's Tort Claims

The summary judgment record indicates that VTI is VTSI's corporate parent. VTI is a holding company and was not itself in a contractual relationship with DART. The distinction between VTI and VTSI means that VTI is not entitled to the immunity that VTSI is entitled to, but it also means that none of Doe I's tort claims against VTI survive summary judgment.

First, VTI did not employ Ivy or Hardnet. VTI therefore cannot be liable to Doe I on a theory of respondeat superior. Because the assault, false imprisonment, IIED, and negligence per se claims against VTI are all based on this theory, they cannot stand.

Second, Doe I's breach of fiduciary duty claim fails as to VTI. Because VTI is just a holding company and did not provide paratransit services to Doe II, there is no evidence

in the summary judgment record that VTI had a fiduciary relationship with Doe II.  It therefore had no fiduciary duty that it could breach.  VTI is thus entitled to summary judgment as to this claim.

Finally, there is no evidence in the summary judgment record that VTI was negligent. "Negligence actions in Texas require 'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  Because it had no relationship with Ivy, Hardnet, or Doe I, there is no evidence that VTI owed a duty to Doe I.  VTI has thus shown that summary judgment is appropriate as to this claim.

VTI, in short, is entitled to summary judgment as to all of Doe I's state claims against it.  Though it has no sovereign immunity, the summary judgment evidence shows that  its status as merely VTSI's holding company means that it is not liable for any of the torts Doe I claims it committed.

## VI.  THE COURT DENIES DART'S MOTION TO STRIKE

Under the 2010 amendments to Federal Rule of Civil Procedure 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As the Advisory Committee noted, "[t]here is no need to make a separate motion to strike.  If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." *Id.* advisory committee's note to 2010 amendments.  If a

party wishes to object to the opposing party's summary judgment evidence, it should do so in its summary judgment briefing. Accordingly, the Court denies DART's motion. *Accord Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam); *Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd.*, Civ. A. No. H-10-0216, 2011 WL 2940671, at *4 n.18 (S.D. Tex. July 19, 2011).[11]

## CONCLUSION

The Court grants VTI's motion for summary judgment in its entirety, and it grants DART's and VTSI's motions in part and denies them in part. The Court grants DART's and VTSI's motions as to all claims except Doe I's claims that DART and VTSI were negligent by failing to operate properly the GPS device installed in the bus in which Doe II was sexually assaulted. Finally, the Court denies DART's motion to strike.

Signed March 19, 2013.

David C. Godbey
United States District Judge

---

[11]The Court notes that it would have denied DART's objections in any case. First, DART objects to Plaintiff's expert Keith Howse's reference to Ivy as a convicted felon. Because the Court's decisions in this Order are unrelated to this reference, the Court would have overruled this objection as moot. Second, DART apparently objects to Howse's statement that DART had not installed video surveillance equipment on the Bus because Howse admitted in a deposition that no law requires that such surveillance equipment be installed. The Court questions the relevance of Howse's admission but would have overruled it in any case because the Court does not base its holding on that evidence.